**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IAC DAYTON, LLC,<br><br>INTERNATIONAL AUTOMOTIVE COMPONENTS GROUP NORTH AMERICA, INC.<br><br>      Plaintiffs/<br>      Counterclaim-Defendants,<br> v.<br><br>NATIONAL RETIREMENT FUND,<br><br>      Defendant/<br>      Counterclaim-Plaintiff. | Case No. 25-CV-7243 (JGLC) |

**DEFENDANT/COUNTERCLAIM-PLAINTIFF'S RESPONSE TO PLAINTIFFS/COUNTERCLAIM-DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

    Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1 of the Local Rules for the United States District Courts for the Southern and Eastern Districts of New York, Defendant/Counterclaim-Plaintiff, the National Retirement Fund (the "Fund"), by their attorneys, McDermott Will & Schulte LLP, submit the following response to Plaintiffs/Counterclaim-Defendants' IAC Dayton, LLC and International Automotive Components Group North America, Inc. (collectively, "IAC") statement of undisputed material facts, which IAC submitted in support of its motion for summary judgment in this action ("IAC's Statement of Facts"). In accordance with Your Honor's Individual Rules of Practice in Civil Cases, the Fund has reproduced each entry in IAC's Statement of Facts below and set out the Fund's responses directly beneath each corresponding entry.

1

1.      The Legacy Plan of the National Retirement Fund (the "Fund") is a multiemployer pension plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1002(37), 1301(a)(3). Wierenga Decl. Ex. A, Memorandum Opinion and Final Award ("Award") at 3; Complaint (ECF 1) ¶ 8; Answer (ECF 13) ¶ 8.

**Response:** The Fund admits the factual assertions contained in Paragraph 1 of IAC's Statement of Facts.

2.      As of the 2019 plan year, the Fund had 233,989 participants, 470 contributing employers, and a funding percentage of 84.1%. Wierenga Decl. Ex. D, 2019 Form 5500 at NRF0002133, NRF0002136-37.

**Response:** The Fund admits the factual assertions contained in Paragraph 2 of IAC's Statement of Facts.

3.      As of the 2020 plan year, the Fund had 227,096 participants, 448 contributing employers, and a funding percentage of 87.3%. Wierenga Decl. Ex. E, 2020 Form 5500 at NRF0002298, NRF0002301.

**Response:** The Fund denies the factual assertions contained in Paragraph 3 of IAC's Statement of Facts on the basis that the assertions stated therein are not material and do not have any bearing on the calculation of IAC's withdrawal liability. (*See* IAC's Statement of Material Facts ¶ 6) (asserting that the applicable measurement date for purposes of IAC's withdrawal liability was December 31, 2019).

4.      IAC contributed to the Fund since at least June 1, 2007. Award at 2; Wierenga Decl. Ex. G, IAC Request for Review at 5.

**Response:** The Fund admits the factual assertions contained in Paragraph 4 of IAC's Statement of Facts.

5.     IAC permanently ceased its contributions to the Fund on February 28, 2020.  Award at 2; Wierenga Decl. Ex. F, Fund Assessment at 2.

**Response:** The Fund admits the factual assertions contained in Paragraph 5 of IAC's Statement of Facts.

6.     Because withdrawal liability is determined as of the last day of the plan year preceding the year during which the employer withdrew, 29 U.S.C.A. § 1391(b)(2)(A)(ii), the applicable measurement date is December 31, 2019.  Award at 2.

**Response:** The Fund admits the factual assertions contained in Paragraph 6 of IAC's Statement of Facts.

7.     On March 2, 2022, the Fund issued a withdrawal liability assessment in the amount of $6,724,094 to IAC.  Award at 2; Fund Assessment at 2.

**Response:** The Fund admits the factual assertions contained in Paragraph 7 of IAC's Statement of Facts.

8.     On April 27, 2022, IAC requested a review of the Fund's withdrawal liability assessment.  IAC maintained because the contribution base units ("CBUs") attributable to one of its facilities were incorrectly included and, further, that the discount rate employed to calculate the withdrawal liability assessment was improper.  Award at 2; Wierenga Decl. Ex. G, IAC Request for Review at 2-3.

**Response:** The Fund admits the factual assertions contained in Paragraph 8 of IAC's Statement of Facts.

9.     On August 23, 2022, the Fund reissued the withdrawal liability assessment, which was reduced to $3,565,687.  The Fund accepted IAC's position regarding the CBUs but rejected

IAC's position regarding the appropriate discount rate. Award at 2; Wierenga Decl. Ex. H, Fund Revised Assessment at 2.

**Response:** The Fund admits the factual assertions contained in Paragraph 9 of IAC's Statement of Facts.

      10.    The Fund's enrolled actuary is Jonathan Feldman ("Feldman") from Horizon Actuarial Services ("Horizon"). Award at 3; Wierenga Decl. Ex. B, January 28, 2025 Hearing Transcript ("Jan. 28 Tr.") 14:5-16:2.

**Response:** The Fund admits the factual assertions contained in Paragraph 10 of IAC's Statement of Facts.

      11.    In 2019 and 2020, Feldman estimated that the Fund's assets would grow at a compounding rate of 7.3% per year, specifically, that the Fund had a "fifty percent" chance of "achieving 7.3 percent." Award at 5-6; Jan. 28 Tr. 37:13-38:15.

**Response:** The Fund denies the factual assertions contained in Paragraph 11 of IAC's Statement of Facts, except the Fund admits that when testifying about assumptions he selected in 2019, Mr. Feldman estimated that the percentage of achieving a 7.3% return was "generally [] around fifty percent. It could be higher, it could be lower depending on the years of the survey." (Direct Examination of Jonathan Feldman at the January 28, 2025 hearing ("Jan. 28 Tr.") ("Feldman Direct"), which Jan. 28 Tr. is attached to the Wierenga Decl. as Exhibit ("Ex.") B, at 37:13-38:19; *see* Memorandum Opinion and Final Award in *IAC Dayton, LLC v. National Retirement Fund*, AAA Case No. 01-22-0005-3399, dated July 30, 2025, attached to the Wierenga Decl. as Ex. A, (the "Award") at 6.)

12.     Feldman arrived at that 7.3% estimate by, among other things, reviewing a survey of growth projections for various asset classes and applying those projections to the Fund's actual assets.  Award at 5-6; Jan. 28 Tr. 25:4-26:14, 86:11-16.

**Response:** The Fund admits the factual assertions contained in Paragraph 12 of IAC's Statement of Facts and respectfully refers the Court to Feldman's full testimony concerning his selection of the 7.3% minimum funding interest rate assumption.  (Feldman Direct 25:4-27:19.)

13.     In the Fund's Schedule MBs filed with the Department of Labor, Feldman represented that the assumptions therein, including the 7.3% interest rate, represented his "best estimate of anticipated experience under the Plan."   2019 Form 5500 at NRF0002214, NRF0002216-17; 2020 Form 5500 at NRF0002402, NRF0002404, NRF0002439.

**Response:** The Fund denies the factual assertions contained in Paragraph 13 of IAC's Statement of Facts, but admits that the 7.3% interest rate represented Feldman's "best estimate of anticipated experience under the plan" for purposes of the Fund's minimum funding requirements. (Award at 6; Feldman Direct 23:10-24.)

14.     Feldman employed that 7.3% estimate to calculate the present value of the Fund's liabilities for purposes of ERISA's minimum-funding requirements.  Award at 5-6; Jan. 28 Tr. 23:10-24.

**Response:** The Fund admits the factual assertions contained in Paragraph 14 of IAC's Statement of Facts.

15.     Feldman did not employ that 7.3% estimate to calculate the present value of the Fund's liabilities for purposes of calculating IAC's withdrawal liability.  Award at 6-8; Jan. 28 Tr. 48:16-19.

**Response:** The Fund admits the factual assertions contained in Paragraph 15 of IAC's Statement of Facts.

16. To calculate the present value of the Fund's liabilities for purposes of calculating IAC's withdrawal liability, Feldman used a rate of 2.53%, which was a rate published by the Pension Benefit Guaranty Corporation ("PBGC"). Award at 6-8; Jan. 28 Tr. 48:16-19, 49:3-6.

**Response:** The Fund admits the factual assertions contained in Paragraph 16 of IAC's Statement of Facts.

17. The PBGC rate is based on the rates insurance companies use to price certain annuities. Award at 8; Jan. 28 Tr. 129:15-131:8; Wierenga Decl. Ex. C, January 29, 2025 Hearing Transcript ("Jan. 29 Tr.") 270:12-271:11.

**Response:** The Fund denies the factual assertions contained in Paragraph 17 of IAC's Statement of Facts, except the Fund admits that as of December 31, 2019, the PBGC rate was based on the rates insurance companies used to price certain annuities. (Award at 8.)

18. The PBGC did not take into account the assets held by the Fund or their likely rate of growth in determining the 2.53% rate. Jan. 28 Tr. 132:7-18; Jan. 29 Tr. 314:18-23.

**Response:** The Fund admits the factual assertions contained in Paragraph 18 of IAC's Statement of Facts.

19. PBGC rates are effectively "risk-free" rates of return. Award at 8; Jan. 29 Tr. 294:5-12.

**Response:** The Fund denies the factual assertions contained in Paragraph 19 of IAC's Statement of Facts and states that "the PBGC rate is a reasonable proxy for a risk-free discount rate." (Award at 8; Cross Examination of Mitchell Hofing at the January 29, 2025 hearing ("Jan. 29 Tr.") ("Hofing Cross"), which Jan. 29 Tr. is attached to the Wierenga Decl. as Ex. C, at 416:17-417:3;

*see* Jan. 28 Tr. of the Cross Examination of Jonathan Feldman ("Feldman Cross"), at 131:9-17; Jan. 29 Tr. of the Cross Examination of Ethan E. Kra ("Kra Cross") at 294:5-12.)

20. The Fund's assets are not principally invested in risk-free investments. Jan. 29 Tr. 295:11-15.

**Response:** The Fund denies the factual assertions contained in Paragraph 20 of IAC's Statement of Facts and respectfully refers the Court to the testimony IAC cites in Paragraph 20 of IAC's Statement of Facts. (*See* Kra Cross 295:7-15) ("Q. And to your knowledge, has this fund in question purchased insurance company annuities? A. Not to my knowledge. Q. And does the fund's asset allocation consist principally of risk-free or near risk-free assets? A. I don't believe it did *at the time.*") (emphasis added).

21. The Fund has not purchased and does not plan to purchase risk-free investments or annuities offered by insurance companies to satisfy IAC's share of unfunded vested benefits. Jan. 29 Tr. 295:7-10; Wierenga Decl. Ex. I, Deposition of Jonathan Feldman at 90:8-17, 92:10-13.

**Response:** The Fund denies the factual assertions contained in Paragraph 21 of IAC's Statement of Facts and respectfully refers the Court to Feldman's testimony at his deposition and Kra's testimony on cross examination at the arbitration hearing. (*See* Transcript of the Deposition of Jonathan Feldman, attached to the Wierenga Decl. as Ex. I ("Feldman Dep. Tr.") at 90:14-17 ("Q. Does the Fund purchase annuities with any withdrawal liability payments it receives from withdrawn employers? A: Not that I'm aware of."); Kra Cross 295:16-20 ("And do you know if the fund plans to shift its investment allocation to risk-free or near risk-free assets? A. I have no knowledge of its intentions in the future.").)

22. Feldman chose the PBGC rate because, in his opinion, it represented a "reasonable settlement rate," so he did not consider the Fund's assets "at all" in selecting it. Jan. 28 Tr. 133:16-20.

**Response:** The Fund denies the factual assertions contained in Paragraph 22 of IAC's Statement of Facts, except the Fund admits that the PBGC Rate is considered a reasonable settlement rate. (*See* Feldman Direct 48:16-49:6.) The Fund respectfully refers the Court to Mr. Feldman's testimony on re-direct examination at the arbitration hearing. (Jan. 28 Tr. of the Re-Direct Examination of Jonathan Feldman ("Feldman Re-Direct") at 180:13-181:3) ("Q. Now, there was a question that was asked whether you considered . . . the actual asset allocation of the NRF in deciding to choose the PBGC rate. And you also talked about risk transfer. Is risk transfer related to the actual allocation of the NRF's portfolio? A. Inherently, the investment portfolio contains risk. Q. So at the time that IAC withdrawal liability was calculated as of December 31, 2019, did the NRF portfolio have -- investment portfolio have risk associated with it? A. Yes.") The Fund also respectfully refers the Court to Mr. Feldman's testimony concerning the analysis he performed on the investment risk present in the Fund's portfolio and Mr. Feldman's testimony concerning the Fund's seven characteristics that exacerbate the investment risk the Fund takes to receive investment returns, which in turn magnify the impact of the transfer of risk from withdrawn employer to remaining contributing employers, participants, and beneficiaries. (Award at 4-5; *see* Feldman Direct 51:12-13; 52:6-15; Feldman Cross 141:8-142:2.)

23. Feldman calculated that the Fund's actual returns on investment are approximately "ninety to ninety-five percent" likely to exceed 2.53% Jan. 28 Tr. 133:2-14.

**Response:** The Fund denies the factual assertions contained in Paragraph 23 of IAC's Statement of Facts. The Fund states that Mr. Feldman testified that he did not recall the chances the Fund's

investment returns would exceed 2.53%, but testified that he thought "it was in the range of ninety to ninety-five percent." (Feldman Cross 134:2-14.)

24. Feldman's testified that he was "looking for a much higher probability of achieving" the rate of return used for withdrawal liability, and "the higher the better." Jan. 28 Tr. 47:3-9, 65:20-22; 66:18-67:10; 107:9-14; 156:25-157:3.

**Response:** The Fund admits that Paragraph 24 of IAC's Statement of Facts quotes a portion of Feldman's testimony, and respectfully refers the Court to Feldman's direct examination at the arbitration hearing for the full text of Feldman's testimony. (*See* Feldman Direct 67:11-23.)

25. All else being equal, had Feldman used his 7.3% estimate to calculate IAC's withdrawal liability, the figure would have been $226,731. Wierenga Decl. Ex. J, Expert Report of M. Hofing at 15. The $3,565,687 that the Fund assessed is more than 15 times greater than that figure.

**Response:** The Fund denies the factual assertions contained in Paragraph 25 of IAC's Statement of Facts. If the Fund's minimum funding assumptions are used to calculate IAC's withdrawal liability, IAC's withdrawal liability would be approximately $1,230,000 to $1,240,000. (Jan. 28 Tr. and Jan. 29 Tr. of the Direct Examination of Ethan E. Kra ("Kra Direct") at 283:15-18; Hofing Cross 422:16-423:16.) The Fund respectfully refers the Court to the testimony of the Mr. Kra on the impact of the inclusion of the Fund's minimum funding administrative cost assumption on the calculation of IAC's withdrawal liability (Kra Direct 276:20-278:22; 283:15-18) and the testimony of Mr. Hofing on the impact of the use of the actuarial valuation of assets, as valued for purposes of the Fund's minimum funding requirements, on the calculation of IAC's withdrawal liability. (Hofing Cross 422:16-423:16.)

Dated: New York, New York
      November 25, 2025

MCDERMOTT WILL & SCHULTE LLP

By:  */s/ Ronald E. Richman*
     Ronald E. Richman
     Andrew B. Lowy
     Alessandra R. Cartolano

919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000
Facsimile: 212.593.5955
Ronald.Richman@srz.com
Andrew.Lowy@srz.com
Alessandra.Cartolano@srz.com

*Attorneys for Defendant/Counterclaim-Plaintiff*